UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC.,<br><br>                              Plaintiff,<br>    vs.<br><br>RUBEN BETANCOURT a/k/a/ RUBEN BETANCOURT SOTO and RAMON MORENO, individually, and d/b/a MARISCOS LA COSTA DE NAYARIT,<br><br>                              Defendant. | CASE NO. 08cv937 JLS (POR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**<br><br>(Doc. No. 8) |

Presently before the Court is J&J Sports Productions, Inc.'s ("Plaintiff") application for Default Judgment. For the reasons stated below, Plaintiff's application is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

On May 27, 2008, Plaintiff filed suit against Defendants Ruben Betancourt and Ramon Moreno, both d/b/a Mariscos La Costa de Nayarit. (Doc. No. 1.) Plaintiff's complaint alleged three claims – two federal statutory claims and the state common law claim of conversion – against Defendants for knowingly intercepting and illegally re-broadcasting the "Julio Cesar Chavez v. Ivan Robinson Fight Program" (the "Program"). Plaintiff owned the distribution rights to the Program. (Compl. ¶ 10.) Defendant Ruben Betancourt was served on August 2, 2008 and Defendant Ramon Moreno was served on October 24, 2008. (Doc. Nos. 4 & 5.) Defendants did

1  not respond to the complaint, and Plaintiff filed for default judgment on April 2, 2009. (Doc. No.
2  8). Defendants were served with the application for default judgment that same day, and have not
3  responded.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment. A court is to grant or deny default judgment at its discretion. *See Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). The Ninth Circuit has set out seven factors for a court to consider when exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted). Generally, upon an entry of default, the plaintiff's factual allegations are taken as true, while the plaintiff's allegations as to damages suffered are not treated as dispositive. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

## ANALYSIS

**I.  Default Judgment**

    A.  <u>Possibility of Prejudice to Plaintiff</u>

This factor weighs in favor of a default judgment, as Plaintiff would be prejudiced if the application is not granted. Defendants are deemed to have admitted all of the allegations in the complaint by failing to respond. Therefore, "Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery." *Philip Morris USA v. Castword Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

    B.  <u>Merits of Plaintiff's Claim and Sufficiency of the Complaint</u>

The second and third factors require that "plaintiff's allegations state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (quotation and citation omitted). Plaintiff raises three claims for relief under: (1) the Federal Communications Act of 1934, 47 U.S.C. § 605; (2) the Cable & Television Consumer Protection

1 and Competititon Act of 1992, 47 U.S.C. § 553; and (3) Conversion.

2        *1.*      *47 U.S.C. § 605*

3       The Federal Communications Act prohibits commercial establishments from intercepting
4 and exhibiting satellite cable programming. 47 U.S.C. § 605(a). *See Kingvision Pay-Per-View v.*
5 *Guzman*, 2009 WL 1475722, at *2 (N.D. Cal. May 27, 2009). In its complaint, Plaintiff alleges that
6 "[w]ith full knowledge that the Program was not to be intercepted, received and exhibited by
7 entities unauthorized to do so, ... [Defendants] did unlawfully publish, divulge and exhibit the
8 Program at the time of its transmission at their San Diego, California location ... [and] [s]aid
9 unauthorized interception, publication, exhibition and divulgence by each of the defendants was
10 done willfully and for purposes of direct or indirect commercial advantage or private financial
11 gain." (Compl. ¶ 13.) Taking the facts alleged as true, Plaintiff has sufficiently pled a violation of
12 47 U.S.C. § 605. *See, e.g.*, *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 WL 1845090, at *3 (E.D.
13 Cal. Jun. 26, 2009).

14       Under § 605, for Defendants to be held liable as both individuals and as an entity, Plaintiff
15 must demonstrate that they authorized the violations or had both "a right and ability to supervise"
16 the violations and a strong financial interest in such activities. *See J&J Sports Productions, Inc. v.*
17 *Potions Bar & Lounge, Inc.*, 2009 WL 763624, at *9 (E.D.N.Y. Mar. 23, 2009). Plaintiff contends
18 that Defendants Betancourt and Moreno are the owner/operators of Mariscos La Costa De Nayarit,
19 where the violations took place, with oversight and management responsibilities thereof. (Compl.
20 ¶¶ 7-8.) As these allegations are undisputed, the Court finds this ownership/operation sufficient to
21 establish vicarious liability under § 605.

22        *2.*      *47 U.S.C. § 553*

23       The Cable & Television Consumer Protection and Competittion Act, 47 U.S.C. § 553(a),
24 "prohibits the unauthorized reception or interception of communications offered over a cable
25 system." *Guzman*, 2009 WL 1475722, at *2. When plaintiffs bring suit under both § 533 and
26 §605, courts tend to refuse to award damages under both claims for the same conduct. *See, e.g.*
27 *Guzman*, 2009 WL 1475722, at *2; *Kingvision Pay-Per-View, Ltd. v. Dailey*, 2002 WL 596806, at
28 *2 (N.D. Cal. Apr. 15, 2002) (citing *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009

1 (2d Cir. 1993)).  Instead, these courts have opted to award damages under § 605 alone.  *Id.*  In the
2 present case, the alleged violation took place on one television set, for one viewing.  The Court
3 therefore will award damages only under § 605.

4     3.  *Conversion*

5   A Plaintiff alleging conversion in California must establish three elements: "(1) ownership
6 or right to possession of property; (2) wrongful disposition of the property right of another; and (3)
7 damages."  *Kingvision Pay-Per-View, Ltd. v. Chavez*, 2000 WL 1847644, at *4 (N.D. Cal. Dec. 11,
8 "Damages for conversion must be based on the value of the property."  *Joe Hand Promotions, Inv.*
9 *v. Pete*, 1999 WL 638215, at *2 (N.D. Cal. Aug. 17, 1999).  Some courts have decided illegal
10 broadcasting of cable programs creates a claim for conversion, while others have not.  *Compare*
11 *Chavez*, 2000 WL 1847644, at *4 (conversion) *with Guzman*, 2009 WL 1475722, at *2 (not
12 conversion).  In the present action, Plaintiff has not presented any estimate of its actual losses, and
13 does not defend its conversion claims in its application for default judgment.  Plaintiff merely asks
14 for $800 in its application for default judgment, with no basis for why that is the appropriate
15 amount.  Further, awarding damages for conversion would unjustly enrich Plaintiff by allowing
16 double recovery.  *See Cervantes*, 2008 WL 583879, at *8.  Accordingly, the Court finds that
17 Plaintiff has not adequately alleged the elements for its conversion claim and therefore default
18 judgment of this claim is inappropriate.

19   C.  <u>Money at Stake in the Action</u>

20   "Default Judgment is disfavored where the same of money at stake is too large or
21 unreasonable in light of defendant's actions."  *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007
22 WL 1545173, at *12 (N.D. Cal. May 29, 2007) (citation omitted).  Plaintiff seeks statutory damages
23 of $50,000 for its surviving § 605 claim.  (Riley Decl. ¶ 7.)  Given that Plaintiff has not adequately
24 supported this request, as discussed *infra*, the amount of damages awarded is not large or
25 unreasonable. Thus, this factor weighs in favor of default judgment.

26   D.  <u>Possibility of Dispute Concerning Material Facts</u>

27   The fifth factor examines the potential for dispute of the material facts.  Plaintiff's version
28 of the events as alleged in the Complaint is supported by the declaration of Paul B. Marino, an

1 investigator. (Doc. No. 8-4.) Accordingly, given that all allegations in the complaint are taken as
2 true, there is no dispute of material fact and this factor weighs in favor of default judgment. *See*
3 *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

    E.    Possibility of Excusable Neglect

5 With regard to whether Defendants have a possibility of excusable neglect, Defendants have
6 made no showing. Defendants were served with notice of the complaint and notice of the
7 application for default judgment, and therefore there is little or no potential for excusable neglect.
8 *See Virgin Records America, Inc. v. Cantos*, 2008 WL. 2326306, at *2 (S.D. Cal. Jun. 3, 2008).
9 This factor therefore supports entry of default judgment.

    F.    Policy Favoring Decision on the Merits

11 "While the public policy favoring disposition of cases on their merits weighs against default
12 judgment, that single factor is not enough to preclude [default judgment]." *Rio Props., Inc. v. Rio*
13 *Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002). "Moreover, Defendant's failure to answer
14 Plaintiff's Complaint makes a decision on the merits impractical, if not impossible." *Cal. Sec.*
15 *Cans*, 238 F. Supp. 2d at 1177. Thus, this factor is, at best, neutral. The Court therefore **GRANTS**
16 Plaintiff's application for default judgment on the § 605 claim and **DENIES** Plaintiff's application
17 as to all other claims.

18 **II.    Damages**

19 Under the Federal Commuications Act, a Plaintiff can elect either actual or statutory
20 damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(I-II). In the present case, Plaintiff has requested
21 statutory damages. (App. for Default at 3-4.) Section 605 permits "statutory damages for each
22 violation . . . of not less then $1,000 or more than $10,000, as the court considers just. . . ." 47
23 U.S.C. § 605(e)(3)(C)(i)(II). Moreover, the court may award enhanced damages of not more than
24 $100,000 if the violation was "committed willfully and for purposes of direct or indirect
25 commercial advantage or private financial gain." *Id.* § 605(e)(3)(C)(ii). Plaintiff in the present
26 case asks for the base penalty of $10,000 plus an enhancement to bring the total award to $50,000.
27 (App. for Default at 7-8.)

28 To support the request for the highest base amount, Plaintiff argues that the most important

factor in assessing damages is deterrence and that the $10,000 base is necessary to deter future violations of § 605. (*Id.* at 6-7.) However, "[i]n the absence of unusual or particularly egregious circumstances under which a defendant broadcast[s] [a] fight, the Court will not award the statutory maximum in damages." *Guzman*, 2009 WL 1475722, at *3 (quotation and citations omitted). Plaintiff has not established such circumstances; to the contrary, the fight was shown on a single television set at an establishment with an estimated 60 viewers (and a maximum capacity of approximately 75). Thus, the Court will not award the maximum base penalty. To promote deterrence, however, the Court will grant a base award of $2,000 (versus the minimum $1,000).

The criteria necessary to enhance an award based on the willful rebroadcast for commercial gain is unclear. Some courts require evidence of a cover charge, increase in food price during the broadcast, and/or advertisement of the broadcast in order to demonstrate willfulness and commercial gain. *See, e.g.*, *Kingvision Pay-Per-View, Ltd. v. Arias*, 2000 WL 20973, at *2 (N.D. Cal. Jan. 7, 2000) (citation omitted); *Kingvision Pay-Per-View, Ltd v. Backman*, 102 F. Supp. 2d 1196, 1199 (N.D. Cal. 2000). Others have found that pirating alone demonstrates willfulness, and that if the broadcast occurs at a bar or restaurant for purposes of entertainment, this is sufficient to establish commercial gain. *See, e.g.*, *Joe Hand Promotions, Inc. v. Cat's Bar, Inc.*, 2009 WL 700125.

The Court agrees with the view that a pirated broadcast at a commercial establishment alone supports a penalty enhancement to the statutory base. "Based on the limited methods of intercepting closed-circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance," the Court finds that Defendants had the requisite wilful intent to obtain the broadcast. *Entm't by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002). Further, the commercial gain is clear – an establishment seeks to attract patrons by broadcasting the fight, which results in increased food and drink sales. By displaying entertainment enjoyed by its patrons, the owner or operator of that establishment is clearly acting for commercial gain. Therefore, because Defendants' illegal broadcast was willful and for the purpose of commercial gain, the Court triples the base award, and grants Plaintiff a total of $6,000. *Cf. Id.* at 777 (tripling award under § 605 penalty enhancement).

**CONCLUSION**

For the reasons stated above, Plaintiff's application for default judgment is **GRANTED** as to the claim under 47 U.S.C. § 605, in the total amount of $6,000. Plaintiff's application is **DENIED** as to all other claims.

IT IS SO ORDERED.

DATED: October 20, 2009

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge